## Case No. 11,211.

### In re PLATT.

[1 Ben. 534; 1 1 Tomp. Nat. Bank. Cas. 181.]

District Court, S. D. New York. Nov., 1867.

RECEIVER OF A NATIONAL BANK—JURISDICTION—COMPROMISING DEBT.

The national banking act (13 Stat. 115), in the fiftieth section, provides that a receiver appoint-

---

1 [Reported by Robert D. Benedict Esq., and here reprinted by permission.]

---

ed under the act may compromise doubtful debts "on the order of a court of record of competent jurisdiction." Held, that this court was such a court.

[In the matter of the petition of F. A. Platt, receiver of the Farmers' and Citizens' National Bank.]

## Case No. 11,212.

### In re PLATT et al.

[7 Ben. 261; 1 19 Int. Rev. Rec. 132.]

District Court, S. D. New York. April, 1874.

CONSTITUTIONAL LAW — SEIZURE OF BOOKS AND PAPERS—IMPORT ACTS.

1. In June and July, 1873, warrants were issued under the 2d section of the act of March 2, 1867 (14 Stat. 547), under which the marshal seized and took possession of books, papers and correspondence, belonging to P. and B., parties named in the warrants. In March, 1874, they presented to the judge who issued the warrants, a petition for the return of the papers, &c. On the hearing on this petition, it appeared that, in January, 1874, they had applied to the district attorney of the United States for such return; that such attorney had the books, &c., brought to his office by the marshal, that he might examine them to see which could be properly returned, and of which he desired copies, and which he desired to retain till the trial of suits which had been commenced on behalf of the United States against P. and B. But, the attorneys of P. and B. refusing to consent that such examination might be there made, the books were returned to the marshal's office. Thereupon, the district attorney wrote to the attorneys to say that he was ready to make such examination whenever they would give such consent, to which they answered, offering to stipulate to produce the books on the trial under objection to their admissibility, and to certify to the correctness of any copies taken. Thereupon this petition was filed: Held, that the section of the act in question was a provision in aid of the due enforcement of the revenue laws, and was not unconstitutional, as being contrary either to the 4th amendment to the constitution, prohibiting unreasonable searches and seizures, or to the 5th amendment, prohibiting the taking of property without due process of law.

[Cited in Boyd v. U. S., 116 U. S. 635, 6 Sup. Ct. 535.]

2. Under the circumstances of this case, nothing was shown to warrant the further retention of the books and papers.

---

1 [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

3. The proper proceedings to be taken, when books and papers have been taken under such a warrant, stated.

[In the matter of the petition of John R. Platt and Edward A. Boyd.]

Stanley, Brown & Clarke, for petitioners.

George Bliss, Dist. Atty., and Thomas Simons, Asst. Dist. Atty., for the United States.

BLATCHFORD, District Judge. The petition in this matter prays for an order directing the return to the petitioners of certain books, papers and correspondence mentioned in the petition. It also prays that three certain warrants named in the petition may be vacated. It alleges that the first warrant was issued on the 14th of June, 1873, the second on the 16th of July, 1873, and the third on the 30th of July, 1873, and that the books, papers and correspondence, the return of which is prayed for, were taken by the marshal under the warrants.

The principal question discussed on the hearing on the petition was as to the constitutionality of the provision of the statute under which the warrants were issued. That provision is the 2d section of the act of March 2, 1867 (14 Stat. 547). It is in these words: "Whenever it shall be made to appear to the satisfaction of the judge of the district court for any district in the United States, by complaint and affidavit, that any fraud on the revenue has been committed by any person or persons interested, or in any way engaged, in the importation or entry of merchandise at any port within such district, said judge shall forthwith issue his warrant directed to the marshal of the district, requiring said marshal, by himself or deputy, to enter any place or premises where any invoices, books or papers are deposited relating to the merchandise in respect to which such fraud is alleged to have been committed, and to take possession of such books or papers and produce them before the said judge; and any invoices, books or papers so seized shall be subject to the order of said judge, who shall allow the examination of the same by the collector of customs of the port into which the alleged fraudulent importation shall have been made, or by any officer duly authorized by said collector. And such invoices, books or papers may be retained by said judge as long as, in his opinion, the retention thereof may be necessary; but no warrant for such seizure shall be issued unless the complainant shall set forth the character of the fraud alleged, the nature of the same, and the importations in respect to which it was committed, and the papers to be seized. And the warrant issued on such complaint, with report of service and proceedings thereon, shall be returned, as other warrants, to the court of the district within which such judge presides."

It is urged, that the provisions of the statute are in conflict with the 4th and 5th amendments to the constitution of the United States.

The 4th amendment provides, that "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The 5th amendment provides, that no person shall "be deprived of life, liberty or property without due process of law." These amendments were proposed by resolution of congress in 1789, and were ratified by the states before 1791.

The constitution (article 1, § 8) gives power to congress "to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the, common defence and general welfare of the United States," and "to make all laws which shall be necessary and proper for carrying into execution" the other powers given to it. The fifth act passed by the first congress was the act of July 31, 1789 (1 Stat. 29), "to regulate the collection of the duties imposed by law on the tonnage of ships or vessels, and on goods, wares and merchandises imported into the United States." This act contains numerous regulations to insure the collection of duties on imported goods. Among other things it provides (section 22) that, in any case where a collector is suspicious of fraud, and that goods which have been entered are not fairly invoiced, it shall be his duty to take them into his possession, and retain them until their value is ascertained and the duty is paid or secured; also (section 23) that it shall be lawful for the collector, or other officer of the customs, on suspicion of fraud, after goods have been entered, to open and examine them; also (section 24) that "every collector, naval officer and surveyor, or other person specially appointed by either of them for that purpose, shall have full power and authority to enter any ship or vessel in which they shall have reason to suspect any goods, wares or merchandise subject to duty shall be concealed, and therein to search for, seize and secure, any such goods, wares or merchandise; and, if they shall have cause to suspect a concealment thereof in any particular dwelling-house, store, building, or other place, they or either of them shall, upon application, on oath or affirmation, to any justice of the peace, be entitled to a warrant to enter such house, store, or other place (in the day time only) and there to search for such goods, and, if any shall be found, to seize and secure the same for trial." These provisions of law were enacted by the same congress which proposed the two amendments to the constitution referred to; and it cannot be suggested, with any force, that these provisions of law could have been regarded as in conflict with those amendments, or that the congress which proposed, or the states which ratified, those amendments, could have regarded those amendments as forbidding the enactment of

the provisions of the act of July 31, 1789, or of kindred provisions. Those provisions relate to the high and sovereign power of congress to collect duties on imports, and they extend to the authorizing of the seizure, on the mere suspicion of the collector, and without a warrant, of imported goods; and of the opening and examination of the same, after seizure, on the mere suspicion of the collector or other officer of the customs, and without a warrant; and of the searching of any ship or vessel, on the mere suspicion by the collector, naval officer and surveyor, of the concealment of goods subject to duty, by such officers or persons specially appointed by either of them for that purpose, and without a warrant; and of the searching of any particular dwelling-house, store, building, or other place, in the day time, under a warrant to be issued by any justice of the peace, on oath or affirmation, on the application of such officers, if they have cause to suspect a concealment therein of goods subject to duty. These searches and seizures, certainly, were not contemplated to be unreasonable, within the meaning of the fourth amendment, either by those who proposed or those who ratified it, nor could they, so far as they were authorized to be made without a warrant, have been contemplated to be unreasonable for want of a warrant. So, too, these searches and seizures could not have been contemplated to be in conflict with the fifth amendment, as depriving a person of property without due process of law. These searches and seizures were summary and severe, but they were in the exercise of the power of congress to collect duties on imports, and cannot be said not to have been necessary and proper to that end. As is said by the supreme court in Murray's Lessee v. Hoboken Land & Imp. Co., 18 How. [59 U. S.] 272, "there has been no period, since the establishment of the English monarchy, when there has not been, by the law of the land, a summary method for the recovery of debts due to the crown;" and "probably there are few governments which do or can permit their claims for public taxes, either on the citizen or the officer employed for their collection or disbursement, to become subjects of judicial controversy, according to the course of the law of the land;" and "imperative necessity has forced a distinction between such claims and all others, which has sometimes been carried out by summary methods of proceeding, and sometimes by systems of fines and penalties, but always in some way observed and yielded to." A search for and a seizure of goods subject to duty is made part of a system for the recovery of duties, and is a necessary and proper part of such a system. Such searches and seizures as the act of 1789 authorizes have never been held to be unreasonable, or to be made without due process of law.

The above provisions of sections 22, 23, and 24 of the act of July 31, 1789, were re-enacted in the 46th, 47th, and 48th sections of the act of August 4, 1790 (1 Stat. 169, 170), and were again re-enacted in the 66th, 67th, and 68th sections of the act of March 2, 1799 (Id. 677, 678). These provisions of the act of 1799 have never been repealed. Provisions like these, in force from the foundation of the government, are a legislative construction of the fourth and fifth amendments of the constitution, and are a construction to the effect that such provisions, to aid in the collection of revenue by duties, are not repugnant to such amendments. These provisions were enacted when the first occasion for establishing a manner of proceeding arose; they have continued throughout the existence of the government, and they have been repeatedly acted on by the other departments of the government. These considerations are entitled to no inconsiderable weight on the question as to whether the proceedings those enactments authorize are in conflict with the amendments referred to. Prigg v. Pennsylvania, 16 Pet. [41 U. S.] 539, 621; Murray's Lessee v. Hoboken Land & Imp. Co., 18 How. [59 U. S.] 272, 279, 280.

In aid of these provisions of the act of 1799, congress, by the 7th section of the act of March 3, 1863 (12 Stat. 740), the title of which act is, "An act to prevent and punish frauds upon the revenue, to provide for the more certain and speedy collection of claims in favor of the United States, and for other purposes," enacted as follows: "Whenever it shall be made to appear, by affidavit, to the satisfaction of the district judge of any district within the United States, that any fraud on the revenue has been, at any time, actually committed or attempted by any person or persons interested, or in any way engaged, in the importation or entry of merchandise at any port within the United States, said judge shall forthwith issue his warrant, directed to the collector of the port at which the merchandise in respect to which said alleged frauds have been committed or attempted, has been imported or entered, directing said officer, or his duly authorized agents or assistants, to enter any place or premises where any invoices, books or papers relating to such merchandise or fraud are deposited, and to take and carry the same away to be inspected; and any invoices, books or papers so received or taken shall be retained by the officer receiving the same, for the use of the United States, so long as the retention thereof may be necessary, subject to the control and direction of the solicitor of the treasury." This provision of the act of 1863 was repealed at the time the 2d section of the act of 1867 was passed. The latter was substituted for the former. The latter confines the warrant to cases of committed fraud, while the former extended it to cases of attempted fraud as well as committed fraud. By the latter the warrant is to be issued to the marshal, while by the former it was to be issued to the collector of the port. By the latter the books and papers taken are made subject to the order of the judge who issues the warrant, and may be retained by him as long as, in his

opinion, the retention thereof may be necessary, he being required to allow the same to be examined by the collector, or by any officer duly authorized by the collector, while, by the former, they were to be retained by the collector so long as the retention thereof might be necessary, subject to the control and direction of the solicitor of the treasury. By the latter it is required that the complaint, on the application for the warrant, shall set forth the character of the fraud alleged, the nature of the same, the importations in respect to which it was committed, and the papers to be seized, and that the warrant shall be returned to the district court. while the former made no affirmative provision as to the contents of any complaint or affidavit, or for any judicial control in the matter after the issuing of the warrant. The provisions of the act of 1867 seem intended to guard the proceeding, by requiring that the marshal, if he takes possession of any books or papers under the warrant, shall produce them before the judge; and by directing that the warrant shall so require the marshal; and by directing that the books and papers taken shall be subject to the order of the judge; and by directing who shall be allowed by the judge to examine the books and papers; and by confiding to the judge the determination of the question as to how long it shall be necessary to retain the books and papers; and by requiring the complainant to set forth the nature and character of the fraud alleged, and the importations in respect to which it was committted, and the papers to be seized; and by requiring the warrant, in respect of service and proceedings thereon, to be returned to the district court, as other warrants. After the books and papers are taken under the warrant, the marshal has no right to examine them himself. or to permit any other person to examine them. until the judge gives the direction as to allowing them to be examined; and the judge is not affirmatively required to allow them to be examined by any person other than the collector, or some person duly authorized by the collector, nor has the marshal, under a direction by the judge allowing them to be examined by the collector, or by an officer duly authorized by the collector, any right to examine them himself, or to allow any person to examine them other than the collector or an officer duly authorized by the collector. These restrictions are, of course, subject to the qualification, that the party whose books and papers are taken under a warrant, may, by consent, waive the safeguards provided by the statute. or modify his rights thereunder.

The basis of the proceeding authorized by the act of 1867 is the commission of a fraud on the revenue by a person interested or engaged in importing or entering merchandise at a port in the United States. This means a fraud which deprives the government of revenue. The revenue from imported merchandise is duties. The proceeding, therefore, concerns the enforcement of the laws for the collection of revenue from duties, and is in aid of such collection. The complaint and the warrant should set forth the importations in respect to which the fraud was committed. so as to identify them as nearly as may be. as, for instance. the names of the vessels, the dates of the importations, the marks on the packages, and the nature of the goods. The frauds alleged in the complaints and warrants in the present case were frauds depriving the government of duties. It would have been competent for the officers of the customs to have seized the goods described in the complaints and warrants in this case, for non-payment of the duties of which the government was deprived by the alleged frauds. This might have been done without warrant, as far as a seizure without warrant is authorized by the statute, or under a warrant, as far as a seizure, when authorized, is required by statute to be made under a warrant. By the act of July 18, 1866 (14 Stat. 178), it is provided (section 2) that it shall be lawful for any officer of the customs, &c., to search any vessel, and any person, trunk or envelope on board, and to seize any goods liable to forfeiture for a violation of law; and (section 3) that it shall be lawful for the same officers or persons to search and examine any vehicle or person on which or on whom he or they shall suspect there are goods subject to duty, and to search any trunk or envelope. wherever found, in which he may have a reasonable cause to suspect there are goods which were imported contrary to law, and to seize any goods found on such search which he shall have reasonable cause to believe are subject to duty, and that any person willfully refusing to permit the search and examination shall be punished, on conviction: and (section 5) that any person authorized by the act to make searches and seizures, or any person assisting him, or acting under his directions, may, if deemed necessary by him or them, enter into or upon. or pass through. the lands, inclosures and buildings, other than the dwelling-house. of any person whomsoever. in the night or in the day time, in order to the more effectual discharge of his or their official duties; and (section 6) that any person forcibly resisting or interfering with any officer or person authorized by the act to make searches or seizures, in the execution of his duty, or rescuing any property seized by him, or, in order to prevent a seizure, destroying or removing goods, shall be punished, on conviction.

The regulations of law requiring the payment of duties on imports. and providing means for enforcing their payment. properly extend to punishment for the violation of such regulations. They also embrace, properly, the forfeiture of goods, to be enforced through their seizure for trial; and a search is a proper part of the means of seizure. The foregoing provisions for the search for and seizure of goods have never been questioned. as in conflict with the constitution. If imported goods may be searched for and seized, because alleged to have been imported or entered in fraud of the revenue, it is difficult

to see why books and papers which relate to the goods in respect to which such fraud is alleged to have been committed may not be searched for and seized and examined. Of course, what is to be searched for and seized is books and papers which not only relate to the goods but will show the fraud. The fourth amendment to the constitution is directed against a search for and seizure of "effects" as fully as it is against a search for and seizure of "papers," and is no more fully directed against a search for and seizure of "papers" than it is against a search for and seizure of "effects." Under the fifth amendment, merchandise is as fully "property" as books and papers are, and books and papers are no more fully "property" than merchandise is. Books and papers appertaining to and evidencing frauds on the revenue in respect to imported goods cannot be said to be unreasonably searched for and seized, in the abstract, if a search for and a seizure of the goods themselves be not, in the abstract, unreasonable; and if a seizure of goods imported in fraud of the revenue does not, in the abstract, deprive a person of the property without due process of law, a seizure of books and papers appertaining to and evidencing such fraud cannot be said, in the abstract, to deprive a person without due process of law of his property in the books and papers. A search and seizure may be unreasonably conducted, in execution, under the statute authorizing it, and thus the right of security sought to be protected by the fourth amendment may be violated; and, under what is due process of law, as authorized by the statute, a person may be deprived of his property, when the statute did not contemplate or authorize such deprivation, and thus the fifth amendment may be violated. But these things are not the fault of the statute as it stands. They grow out of the fact that the statute is administered, in the particular case, in a manner not authorized by the statute. They are violative alike of the statute and of the constitution, but they have no effect to make the statute unconstitutional.

Congress, by the 8th section of the act of March 3d 1863 (12 Stat. 740), has provided that "if any person shall willfully conceal or destroy any invoice, book or paper relating to any merchandise liable to duty, which has been, or shall hereafter be, imported into the United States from any foreign port or country, after an inspection thereof shall have been demanded by the collector of any collection district within the United States, or shall at any time conceal or destroy any such invoice, book or paper, for the purpose of suppressing any evidence of fraud therein contained, such person shall be deemed guilty of a misdemeanor, and shall, upon conviction thereof, be punished by fine not exceeding five thousand dollars, or by imprisonment not exceeding two years, or both, at the discretion of the court." This enactment, so far as it relates to the punishment of the offence of concealing or destroying any invoice, book or paper for the purpose of suppressing any evidence therein contained of a fraud on the revenue in the importation of merchandise liable to duty, is valid and constitutional, under the principles laid down by the supreme court, in its opinion given by Chief Justice Marshall, in McCulloch v. State of Maryland, 4 Wheat. [17 U. S.] 316, 416–421. If it may be made an offence to conceal or destroy books or papers containing evidence of a fraud on the revenue in the importation of merchandise liable to duty, for the purpose of suppressing such evidence, it is difficult to perceive why such books and papers may not be sought for and taken, by the sovereign power, to be examined, to see the evidence which they so contain. The end—the collection of duties—is legitimate and within the scope of the constitution, and the means—the examination of the record of the fraud—are appropriate and plainly adapted to the end of recovering the withheld duties, notwithstanding the fraud. These means are not prohibited by the constitution, as has been shown, but consort with its letter and spirit. They are, therefore, constitutional.

This statute, the 2d section of the act of 1867, was held to be constitutional, against the objections above considered, by the circuit court for the district of Maine (Clifford and Shepley, JJ.), in Stockwell v. U. S. [Case No. 13,466] in affirmance of the decision of the district court for that district to the same effect. The judgment of the district court, which was in favor of the United States, was affirmed by the circuit court, and the defendants removed the case, by writ of error, to the supreme court, which affirmed the judgment. 13 Wall. [80 U. S.] 531. But, although the defendants raised in the circuit court the question of the unconstitutionality of the 2d section of the act of 1867, they did not raise it before the supreme court.

Kindred enactments have been held to be constitutional, against like objections. Section 14 of the internal revenue act of June 30, 1864, as amended by section 9 of the act of July 13, 1866 (14 Stat. 101), provides, that an assessor may require, by summons, the production of books of account containing entries relating to the trade or business of any person liable to pay tax, and that, if the summons be not obeyed, obedience to its requirements may be enforced by an attachment to be issued against the person summoned, by a judge of the district court; and that the assessor may enter the premises of any person neglecting to make a return of taxable property, and himself make the list of taxable property. The 49th section of the act of July 20, 1868 (15 Stat. 144), provides that a supervisor of internal revenue "shall have power to examine all persons, books, papers, accounts and premises, and to administer oaths, and to summon any person to produce books and papers, or to appear

and testify under oath before him, and to compel a compliance with such summons in the same manner as assessors may do." In Re Meador [Case No. 9,375], a supervisor of internal revenue issued a summons under the said 49th section, for the production of books and papers, which was not obeyed, and the district judge for the district of Georgia was then applied to to issue an attachment to compel obedience to the summons. It was objected that the provisions referred to were in conflict with the fourth and fifth amendments to the constitution, but the objection was overruled by the court (Erskine, J.), after full consideration. In Stanwood v. Green [Id. 13,301], the 49th section of the act of 1868 was upheld as constitutional by the district court for the Southern district of Mississippi (Hill, J.), against an objection that it was repugnant to the fourth amendment to the constitution. In Re Strouse [Id. 13,-548], the same view was taken of the 14th section of the act of 1864, as amended, against the like objection. See, also, In re Phillips [Id. 11,097].

In the present case the alleged frauds are charged, in the complaints and warrants, to have been committed by the persons whose premises are to be entered and whose books and papers are to be taken, and to have consisted, in the particulars described and set forth in the complaints and warrants, in the defrauding of the government, by such persons, of duties on goods imported by them. There can be no valid objection, therefore, to the scope of the warrants.

The 7th section of the act of 1863 provided, that the collector might take and carry away the invoices, books and papers relating to the merchandise or fraud, "to be inspected," and might retain them "for the use of the United States so long as the retention thereof may be necessary." The 2d section of the act of 1867 provides, that the invoices, books and papers taken shall be subject to the order of the judge, who shall allow the examination of them by the collector, or by any officer duly authorized by the collector, and that the judge may retain them as long as, in his opinion, the retention thereof may be necessary. The words "for the use of the United States" are not found in the act of 1867, but they are necessarily implied in that act, for, the proceeding being one in aid of the collection of the revenue by the United States, the books and papers must be not only for the use of the United States, but cannot be for the use of any other than the United States. The manifest object of the act is examination of the books and papers, in respect to the alleged fraud, and retention thereof as long as, in the opinion of the judge, may be necessary, not only for the purpose of examination, but for the purpose of the use, on behalf of the United States, of the evidence which the books and papers may. when examined. afford in respect to the fraud alleged. This is neces-

sarily confided to judicial discretion, in view of all the circumstances of the particular case.

I am, therefore, now called upon to say whether the retention of the books and papers in the present case is longer necessary. The warrants were issued and executed in June and July, 1873. The petition for their return was sworn to on the 12th of March, 1874. No earlier application was made to this court for their return. It appears, by said petition, that three suits are pending, brought by the United States against the petitioners, in August, 1873, to recover moneys, founded on the frauds alleged in the warrants. It must be assumed that the books and papers were adequately examined before the suits were brought, or, if not, that abundant time has elapsed, not only for their examination but for the taking of such copies of and extracts from them as relate to the frauds alleged in the warrants. Copious extracts from letters, alleged to show the frauds, were presented to the court on the hearing on the petition, showing that the papers had been searchingly examined. The defendants set forth, in their petition, that the books and papers are necessary to them for their preparation for trial in the suits referred to. The books and papers are or ought to be in the custody of the marshal, under the warrants. It is alleged, in the petition, that they, or the principal part of them, are in the office of the marshal; that the marshal, on being applied to to return them, referred the matter to the. district attorney; that the petitioners applied, many months since, to the district attorney for their return, but unsuccessfully; that they renewed their application to the district attorney on the 5th of February last, by a letter, of which they set forth a copy; but that the application has not been complied with. The district attorney makes affidavit that the petitioners did not apply to him several months since for the books and papers, but first applied about the middle or latter part of January; that he stated, in reply, that he would examine as to the matter; that, on inquiry, he found that the papers and the entries in the books which are, in his opinion, essential for the government to retain until the trials of the suits referred to, are very numerous; that thereafter he arranged, as he supposed, with the attorney for the petitioners. that all the books and papers should be brought to the district attorney's office, and that he, the district attorney, would, as rapidly as possible, examine them, and see if any, and which ones, could be properly returned to the petitioners, of which, if any, he desired to have copies made, and which, if any, he desired to retain until the trials; that, accordingly, the marshal sent the books and papers, in a box, to the district attorney's office, where they were opened in the presence of said attorney, and, as the district attorney was about to

commence to examine them, he remarked to the said attorney that, of course, it was understood that the bringing of the books and papers to the district attorney's office was with the consent of the petitioners, and that they assented to the making of such examination by the district attorney; that the said attorney then stated that he could give no consent of any kind; that thereupon the district attorney told him that he would not touch the books and papers, or retain them in his office; that the district attorney then, in the presence of said attorney, had them nailed up, and ordered them to be returned to the marshal, telling said attorney that if, at any time, he would give a consent that the district attorney might go over them, or would get any order from the court to that effect, the district attorney would do so, and that, in the mean time, the district attorney would request the marshal to give to the petitioners and their counsel all possible access to the books and papers; that he then addressed to the petitioners' attorneys, on the 3d of February last, a letter, of which he sets forth a copy, and received in reply the said letter of February 5th; and that the district attorney is, and has always been, ready to examine the books and papers, and to arrange, if possible, for their return to the petitioners. The district attorney states, in his affidavit, as the reason for his action, that he knew the petitioners had commenced a suit against one person for the taking of the books, and he did not desire to subject himself to a similar suit. The letter of the 3d of February from the district attorney to the attorneys for the petitioners was in these words: "In accordance with what I understood to be your wishes, I requested the marshal to bring the books and papers of Platt & Boyd to my office, in order that you might examine them with more convenience to yourselves, and that I might the more readily see which, if any of them, I should be justified in delivering to you. But, when, on opening the box in the presence of your Mr. Stanley, he declined to consent to their being here, or to make any stipulation whatever, I at once nailed up the box and requested the marshal to take it into his personal custody. I have since requested the marshal to give you or your clients constant access to them. If you desire, I will cause an examination to be made, to see whether any, and which, can be returned to you, with a due regard to the interests of the government." The letter of the 5th of February from the attorneys for the petitioners to the district attorney was in these words: "We have your favor of the 3d instant, relative to the books and papers of Platt & Boyd. We shall be glad to receive, on behalf of our clients, from any one, such of their books and papers as may be returned to them, and, on their behalf, we request the delivery of all their books and papers to

them, as we have heretofore requested such delivery. They have now been out of the possession of our clients for upwards of seven months, and there has been ample time to take copies. Our clients need them in their business, and to enable them to prepare for trial in the suits pending. We offer to stipulate to produce them upon the trial, reserving our right to object to their admissibility in evidence upon the same grounds that we might object on the trial had they not been returned to us, or, in default thereof, to admit secondary evidence of their contents, subject only to such objection as might be made to the originals. We are also ready to certify as correct any copies which have been or may be taken. Our Mr. Stanley did not object to their being at your office, but declined to assume the risk of their loss or injury by fire or otherwise, as we contend that the taking of them was illegal and a trespass, and we do not desire to prejudice the claims of our clients for their seizure, while we do not wish to give you any unnecessary trouble in the matter, nor apply to the court for them, if we can, by any reasonable delay, obtain them without such application."

Nothing is shown to me on which I can base a satisfactory opinion that the further retention of any of these books and papers is either necessary or proper. On the contrary, there having been ample time for their examination, and the petitioners having offered, in the letter of February 5th, to stipulate to produce them upon the trial, or, in default thereof, to admit secondary evidence of their contents, and to certify as correct any copies which had been or might be taken, and such offer not having been accepted by the district attorney, and he having declined to examine the papers unless the petitioners should affirmatively assent to his doing so, or express a desire that he should do so, there can be no propriety in retaining the papers longer. The statute contains nothing indicating an intention that the books and papers taken under a warrant shall be retained until and unless the party from whom they are taken shall assent to their examination. They ought, in all cases, to be examined promptly, with a view to the identification of such or such parts of them as answer the description in the warrant, and to the taking of such copies as it may be deemed important to take for the purposes of evidence, and to their restoration, as soon as possible, to the custody from which they were taken. The question of retaining any of them, instead of retaining merely copies of them, until an approaching trial can be had, is one which must be determined by the judge, in each case, as it arises, on the circumstances presented. In the present case, I think the petitioners are entitled to an order that the marshal return the books and papers to them forthwith, and without further examination by any person, and unconditionally.